JOHN L. KRIEGER (Nevada Bar No. 6023)
jkrieger@lrlaw.com
LEWIS AND ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200
(702) 949-8365 (fax)

ERIC SOMMERS (*Pro Hac Vice to be submitted*)
eric@sommerslaw.com
SOMMERS LAW, PLLC
600 State Street, Suite 1
Portsmouth, New Hampshire 03801
(603) 570-4854

*Attorneys for Herb Reed Enterprises, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HERB REED ENTERPRISES, LLC, a Massachusetts company,<br><br>Plaintiff,<br><br>vs.<br><br>FLORIDA ENTERTAINMENT MANAGEMENT, INC, a Nevada company; and LARRY MARSHAK, an individual,<br><br>Defendants. | Case No.<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

Plaintiff Reed Enterprises, LLC ("Reed") seeks preliminary and permanent injunctive relief to prevent Defendants, Florida Entertainment Management, Inc. and Larry Marshak, or any person or entity Defendants manage, control or are affiliated with from any further use of the mark THE PLATTERS.

The Plaintiff's owner, Herbert Reed was the founder and naming member of the vocal group "The Platters." Defendants were never members of the original group and have no rights in the mark THE PLATTERS. They are nonetheless wrongfully using the mark in promoting copycat vocal groups in Las Vegas and around the country, representing either explicitly or implicitly that they are the same group as the original. Defendants' actions improperly trade off of Plaintiff's

goodwill, have caused, and will continue to cause, confusion in the marketplace, and otherwise interfere with Plaintiff's use of THE PLATTERS and HERB REED AND THE PLATTERS marks.

## II. FACTUAL BACKGROUND

### A. The Founding of The Platters and the Early Years[1]

In 1953, Herbert Reed founded and named the vocal group called "The Platters" which originally included Reed, Joe Jefferson, Alex Hodge and Cornell Gunther. Declaration of Frederick J. Balboni, Jr. ("Balboni Decl.") ¶¶5-6. Over the next year the group underwent several changes. Jefferson and Gunther were replaced in 1954 by David Lynch and Tony Williams, who, with Reed and Hodge, recorded several songs as The Platters on the Federal Records label. (*Id.* ¶ 6.) In 1954, the group added Zola Taylor. Finally, Paul Robi replaced Hodge. The 1954 group comprised of those five performers—Reed, Robi, Lynch, Williams and Taylor—are sometimes referred to as the "original" Platters. (*Id.* ¶ 7.) It was through the efforts of Herbert Reed and the other original members of the group that The Platters became famous and a group of major importance to the music industry. (*Id.* ¶ 8.) The importance and fame of these original members was unequivocally recognized when they were inducted into the Rock & Roll Hall of Fame in 1990 the Vocal Group Hall of Fame in 1998, and the Grammy Hall of Fame in 1999 and 2002. (*Id.*)

In 1954, Buck Ram, a songwriter and promoter, took on a management role with The Platters. (Balboni Declaration ¶ 9.) In 1956, Ram purported to form a company called Five Platters, Inc. ("FPI") and tried to take ownership of the mark by having the original Platters assign away their rights, though those attempts were later determined to be a sham and thus void. (*Id.* ¶¶ 10-11.) Over the ensuing years, all of the members of the original 1953 group and the "original" group, except for Herb Reed, left and eventually stopped performing altogether. (*Id.* ¶ 12.) In 1969, Herbert Reed discontinued his relationship with Ram. (*Id.* ¶13.) He continued performing using the name "The Platters" or a derivative thereof separately from Ram, FPI and other vocal

---

[1] Many of the factual allegations presented here were previously presented to this Court in the recently filed case entitled Herb Reed Enterprises, Inc. et al. v. Monroe Powell's Platters LLC et al., Case No. 2:11-CV-02010-PMP-RJJ, and recounted in the Court's order on preliminary injunction.

groups managed by FPI/Ram.

### B. Litigation Against Reed[2]

As members of the original Platters left, FPI began legal action to prevent them from using THE PLATTERS mark in connection with their own performances. Mr. Reed has been a party to litigation with FPI and its various related entities and/or owners[3] on the following occasions:

- In 1972, Reed sued FPI in California, alleging he owned exclusive rights to THE PLATTERS mark. The case was settled in 1975 without a final determination of rights to the mark, and with the parties expressly reserving their claims of ownership in THE PLATTERS mark (the "1975 Settlement"). Reed thereafter continued to appear and perform as The Platters.

- In 1984, FPI brought suit again against Reed in the Southern District of Florida for using THE PLATTERS mark in connection with his performances. The exorbitant costs of litigation were causing Reed great financial hardship, and Reed entered into a stipulation in 1987 with FPI (the "1987 Stipulation") agreeing that he could perform under the name "Herb Reed and The Platters" or some combination of those terms, but that he would not appear solely as "The Platters." The 1987 Stipulation did not address either FPI's or Reed's rights in the mark THE PLATTERS and left open the issue of ownership by agreeing that if a court determined that "Five Platters, Inc. has no right in the name then nothing in [the stipulation] shall be construed to limit Herbert Reed's rights in the name 'The Platters.'" *Herb Reed Enters. v. Monroe Powell's Platters, LLC*, 2012 U.S. Dist. LEXIS 12453 at *8 (D. Nev. Feb. 1, 2012).

- In 1996, FPI, Larry Marshak and others sued Reed in the United States District Court for the Eastern District of New York, seeking to prohibit Reed from using THE PLATTERS mark in connection with his performances (the "New York Action"). The New York District Court held that Reed was bound by the terms of the 1987 Stipulation until such time as a court made a final determination that FPI had no rights in the mark. The court also ordered that Reed's registration of the mark THE PLATTERS be canceled. *See Marshak v. Reed*, 229 F. Supp. 2d 179 (E.D.N.Y. 2002).

- In 2010, Reed and his companies sued FPI, PPI and Jean Bennett in the United States District Court for the District of Nevada for trademark infringement (the "Nevada Action.)

On May 16, 2011, this Court entered a default judgment and permanent injunction declaring that:

---

[2] The legal battles between FPI, Ram, Bennett, original members of the Platters and others have been quite extensive and are well documented, but resulting in inconsistent and confusing decisions in various state and federal courts across the country. A summary of the litigation was recounted by this Court in *Herb Reed Enters. v. Monroe Powell's Platters, LLC*, 2012 U.S. Dist. LEXIS 12453 at **2-12. (D. Nev. Feb. 1, 2012).

[3] Many cases also involved another company, Personality Productions Inc. ("PPI") a company that marketed and promoted the groups managed by FPI. FPI and PPI were owned, in whole or in part, by Buck Ram and his secretary Jean Bennett, and they were parties in some of the actions as well.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

> A. That Defendants Five Platters Inc. and Personality Production have never used the mark "The Platters" in a manner that is not false and misleading and thus never acquired common law rights to the mark and cannot assert that they have.
>
> B. Herbert Reed, having first used the mark "The Platters" in commerce in 1953, and having continuously used the mark in commerce since then has superior rights to the mark to all others, including Five Platters, Inc. and Personality Productions, Inc., and anyone claiming rights from or through them.

Declaration of Eric Sommers (hereinafter "Sommers Decl.") at Ex. A. The Court also granted Summary Judgment against Jean Bennett, finding, among other things that:

> [t]o date, the defendant has not submitted any evidence to rebut the Ninth Circuit decision and has instead caused additional harm to the plaintiffs by continuing to assert nonexistent rights in the mark. Where a plaintiff has prevailed on its trademark infringement claims, been granted a permanent injunction, and has demonstrated that the defendant has no legal claim to the mark, a court should grant declaratory relief. The court agrees with the plaintiffs and therefore declares that the defendant and the companies she controls have never had common law rights in the mark "The Platters."

*Herb Reed Enters. v. Bennett*, 2011 U.S. Dist. LEXIS 70456, **14-15 (D. Nev. 2011). The final claim against Bennett was dismissed. No appeals were taken.

### C. Defendants' Use of the Mark THE PLATTERS

Larry Marshak is a promoter of fake oldies musical groups, including groups using the name "The Platters." *Marshak v. Reed*, 2012 U.S. Dist. LEXIS 32951 at **4-5 (E.D.N.Y. Mar. 12, 2012). As noted above, Marshak was a party to the New York Action against Herb Reed commenced in 1996. In that case, Marshak predicated his rights in the mark THE PLATTERS on acquisition of rights from FPI and Tony Williams, another original member of "The Platters. *Marshak v. Reed*, 2001 U.S. Dist. LEXIS 880 at *5 (E.D.N.Y. Feb. 1, 2001). On October 22, 2001, after the decision in the New York Action, Marshak filed for bankruptcy. Sommers Decl. Exh. C. Marshak listed a license for the registered trademark, THE PLATTERS but did not list any interest in any other permutation of the mark THE PLATTERS. *Id.*

Marshak's current claim to the mark THE PLATTERS derives from FPI or its related entities, as it did in 1996. Marshak asserts that since the bankruptcy, he has reacquired rights to the mark from FPI through a series of transactions with various companies.[4] (Sommers Decl. at Ex. B

---

[4] Over the years, Marshak, his relatives, and his business colleagues have created a myriad of companies in an ever-shifting landscape of business entities that are used to exploit the name and

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

¶ 6.) Marshak claims that on or about June 5, 2006, Live Gold, Inc. (who is not a party to the New York Action) acquired from FPI, PPI and/or the shareholders of these corporations whatever rights they had in the mark THE PLATTERS. *Id.* Live Gold Inc.'s ('Live Gold') acquisition was as a result of a purported judgment entered in <u>Calcap Ltd. v. Live Gold, Inc.</u>, Index No. 20517/05, in the Supreme Court of New York for the County of Queens. *Id.*[5] Live Gold then transferred its rights to Larry Marshak. (*Id.* ¶ 7.) Since 2008, Marshak and Florida Entertainment Management, Inc. have used THE PLATTERS mark to market and promote live musical performances throughout the United States, including a show in Las Vegas. (*Id.* ¶¶ 10-13.)

---

goodwill of oldies groups and evade court orders. For a description of the various companies used by Marshak and his relationship to them, *see Marshak v. Treadwell*, 595 F.3d 478, 484 (3d Cir. 2009).

[5] Review of that case, however, leads to grave concerns over the legitimacy of that action.

- The parties in that case, except for FPI PPI and Jean Bennett, are all related. Cal-Cap, Ltd. was or is owned by Marshak's wife, Andrea. Lowell B. Davis ("Davis") served as Calcap's attorney and is Larry Marshak's attorney and business associate. *Marshak v. Treadwell*, 2007 U.S. Dist. LEXIS 66622 at **3-6 (D.N.J. Sept. 7, 2007).

- Andrea Marshak is also an officer of defendant Live Gold and has authority to act on its behalf. Sommers Decl. ¶10.

- Cal-Cap sued Live Gold, Five Platters Inc. and Personality Productions on September 20, 2005. On May 16, 2006, Davis entered an appearance on behalf of Jean Bennett, FPI and PPI as defendants in the case brought by his other client Cal-Cap. Sommers Decl. ¶11.

- The agreement on which the "Judgment" is based is signed by Larry Marshak as a "witness." See Sommers Decl. ¶13. Lowell Davis, who is Marshak's and Cal-Cap's attorney, but who somehow represented Bennett FPI and PPI in an action adverse to Cal-Cap, "defended" those parties by negotiating a settlement that transferred all of his "clients" interests to Live Gold, which is partly owned by Marshak's wife. *Id.*

- Two weeks after the Judgment was entered, Live Gold (Larry Marshak's wife) purportedly gave Larry Marshak the option to take an assignment in the mark THE PLATTERS. Sommers Decl. ¶13.

These facts alone indicate that the purported lawsuit between Cal-Cap and Live Gold was nothing more than a sham in an effort to try to claim ownership rights in the mark THE PLATTERS and seek the imprimatur of a court to legitimize the transaction to others. Regardless, because Marshak claims to derive his rights from FPI and/or PPI, the exact process through which he claims they were acquired may not be relevant for purposes of this motion.

### D. Marshak's Recent Legal Action in New York in Response to the Nevada Action

On or about May 27, 2011, Larry Marshak and Florida Entertainment Management, Inc. brought an action in the Eastern District of New York against Herb Reed for trademark infringement and state law claims entitled <u>Larry Marshak and Florida Entertainment Management, Inc. v. Herb Reed and John Doe Nos. 1-10.</u>, Case No. 11-CV-2582.[6] Marshak alleged that statements made by Reed and his companies in the Nevada Action infringed on his newly acquired rights in THE PLATTERS mark. Marshak also asserted that the Nevada Court's decisions would "interfere" with contracts for his fake "Platters" groups. Reed filed a motion to dismiss on September 9, 2011, which was granted on March 12, 2012. *See Marshak v. Reed*, 2012 U.S. Dist. LEXIS 32951 (E.D.N.Y. Mar. 12, 2012).

Concurrent with the infringement action, Marshak filed an Order to Show Cause for Civil Contempt and Temporary Restraining Order claiming that Reed and his companies were in contempt of that Court's 2001 injunction as a result of having filed the Nevada Action. *Marshak v. Reed*, 2012 U.S. Dist. LEXIS 32951 at **9-10. Marshak sought to enjoin the Nevada Action, which he conceded he knew about since at least May 20, 2011. (*See* Sommers Decl. at Ex. B ¶¶ 16 & 18.) The Court denied the request for the temporary restraining order, and after full briefing held a hearing on June 28, 2011. *Marshak v. Reed*, 2012 U.S. Dist. LEXIS 32951 at *8. On March 12, 2012, the Court ruled that there was no contempt, as nothing in the injunction prevented Reed from bringing the Nevada Action or seeking a determination of whether FPI, PPI or the companies' owners had rights in the mark THE PLATTERS in the first instance "because the 1987 stipulation contemplates a later court decision as to FPI's rights in 'The Platters' mark." *Marshak v. Reed*, 2012 U.S. Dist. LEXIS 32951 at **12-13.

### E. Reed Registers HERB REED AND THE PLATTERS

On December 23, 2003, the mark HERB REED AND THE PLATTERS was registered on the principal register with the United States Patent and Trademark Office, Registration Number 2,796,412. (Balboni Decl. ¶ 17.) On June 24, 2010, the Patent and Trademark Office provided

---

[6] In fact, Herb Reed has transferred all his rights in the marks HERB REED AND THE PLATTERS and THE PLATTERS to his company, Herb Reed Enterprises, LLC. (Balboni Decl. ¶ 19.)

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

Notice Of Acknowledgement of incontestability of the mark "Herb Reed And The Platters" pursuant to §15 of the Trademark Act, 15 U.S.C. §1065. (*Id.*) Rights to the mark were assigned to Herb Reed Enterprises, Inc., who assigned them to Herb Reed Enterprises, LLC. (*Id.* ¶¶ 18-19.)

### F. Defendants Continue To Wrongfully Use THE PLATTERS Mark

Defendants make no effort to distinguish their fake Platters groups from the original. Their show at the Crown Theater in the Rio Hotel and Casino is promoted as:



The group is represented as being the same as the original, and goes so far as to use a photo of a vintage record album which features Herbert Reed front and center:

**The Platters**

The Platters were a successful vocal group of the early rock and roll era. Their distinctive sound was a bridge between the pre-rock Tin Pan Alley tradition and the burgeoning new genre. The act went through several personnel changes, with the most successful incarnation comprising lead tenor Tony Williams, David Lynch, Paul Robi, Herb Reed, and Zola Taylor.

**Hits**

- The Great Pretender
- Only You
- The Magic Touch
- Twilight Time
- You'll Never Know
- Remember When

The bio for Marshak's group call them "the most successful group of the early rock and roll era" and list the hits of the original group. Further, in a video promoting Defendants' show, Defendants represent their Platters group as "the most legendary group[] of all time, live and in concert." (Balboni Decl. ¶ 22.)[7]

---

[7] Defendants have stated they will add the word "revue" after the "The Platters," but as of the date of filing, have not done so. In any event, change the name from "The Platters" to "The

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

Defendants' continued use of the mark "The Platters" in connection with groups they represent to be the official or original group, licensing of the mark to others, and assertions that Reed or his companies do not own the rights to the mark, is deceptive and misleading to the public, causes confusion, and causes Plaintiff irreparable harm. (*See* Balboni Decl. ¶¶ 24-28.) Thus, Plaintiff is entitled to preliminary injunctive relief to prevent Defendants from any further use of the mark THE PLATTERS.

### III. ARGUMENT

"A preliminary injunction may be granted in a trademark case where the moving party demonstrates either '(1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in [its] favor.'" *Grocery Outlet v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (quoting *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985). "Each represents a point on a sliding scale where the degree of irreparable harm increases as the probability of success decreases [and] are not separate tests but, rather, 'the outer reaches of a single continuum." *Herb Reed Enters. v. Bennett*, 2011 U.S. Dist. LEXIS 9212, 1-2 (D. Nev. Jan. 21, 2011) (citing. *Grocery Outlet, supra,* and other cases). As the following discussion will demonstrate, the above elements are established by both the facts in the Complaint and supporting documents, and prior judicial decisions related to other litigation concerning THE PLATTERS mark.

**A.     There is a Substantial Likelihood that Reed Will Prevail on the Merits of His Trademark Infringement Claims**

In order to establish likelihood of success on the merits in a trademark infringement action, the plaintiffs must show that "(1) they are the owner of a valid, protectable mark; and (2) the alleged infringer is using a confusingly similar mark." *Rockstar Inc. v. Rap Star 360 LLC*, No. 2:10-CV-00179 (D. Nev. July 6, 2010) (citing *Grocery Outlet v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007)); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

---

Platters revue" does not end the likelihood of confusion because it does not clarify that the source of the services represented by the mark are not connected to the original group or the Plaintiff.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169
-8-

Both of these elements are established by the facts set forth in the pleadings and prior decisions involving litigation over this mark.

          1.     *Plaintiff's Rights To The Mark THE PLATTERS Are Superior To Those Of Defendants Because Reed Used The Mark First*

Rights in a mark are acquired "through appropriation and use of the mark in commerce." *Rick v. Buchansky*, 609 F. Supp. 1522, 1531 (S.D.N.Y. 1985); 15 U.S.C. § 1065. It is undisputed that Herb Reed and the original members of The Platters were the first to use the mark THE PLATTERS in connection with a vocal group. Reed formed and named "The Platters" in 1953. The Platters performed live acts both 1953 and 1954, and recorded songs for the Federal Record label before there was any connection with the Defendants. Reed, along with the other members of the original group, made the mark famous through their performances and recordings. The original Platters (and not counterfeit "Platters" groups such as ones promoted by Marshak) were recognized for their achievement by Rock & Roll Hall of Fame in 1990, the Vocal Group Hall of Fame in 1998, and the Grammy Hall of Fame in 1999 and 2002. Further, since 1953, Reed has performed continuously using THE PLATTERS mark by itself or in combination with his name, and solely as HERB REED AND THE PLATTERS (or some facsimile thereof) since 2001. Reed has also used the mark in commerce continuously since 1953 in connection with the sale of original Platters' albums and collecting royalties.

There can be no question that he, as part of the original group, first appropriated the mark in commerce. *See Robi v. Reed*, 173 F.3d 736, 740 (9th Cir. 1999). There is also no question that Reed individually or through his companies is the only one who has continuously used the mark since the group's inception. *See id.* Finally, as the only remaining member of the group after the other original members left, the rights and goodwill in THE PLATTERS mark rest with Reed and those who derive their rights through him. *See Messer v. The Fadettes*, 46 N.E. 407 (Mass. 1897) (holding that a musical group's name rests on the personal reputation of the original performers, and use of that name to designate a body of musicians other than those who earned a reputation under that name would be a fraud on the public); *Robi v. Reed*, 173 F.3d 736 (9th Cir. 1999) (Reed

as the only member of the original group who remained after the others left had a right to use "The Platters" mark to the exclusion of other original member).

Reed's superior rights in the mark have been confirmed by this Court. On May 16, 2011, the Court entered a default judgment and permanent injunction against FPI and PPI, declaring that:

> A. That Defendants Five Platters Inc. and Personality Production have never used the mark "The Platters" in a manner that is not false and misleading and thus never acquired common law rights to the mark and cannot assert that they have.
>
> B. Herbert Reed, having first used the mark "The Platters" in commerce in 1953, and having continuously used the mark in commerce since then has superior rights to the mark to all others, including Five Platters, Inc. and Personality Productions, Inc., and anyone claiming rights from or through them.

(Sommers Decl. at Ex. A.)[8] On June 30, 2011, the Nevada court granted Reed's motion for partial summary judgment against FPI and PPI's owner, Jean Bennett, finding, among other things that:

> [t]o date, the defendant has not submitted any evidence to rebut the Ninth Circuit decision and has instead caused additional harm to the plaintiffs by continuing to assert nonexistent rights in the mark. Where a plaintiff has prevailed on its trademark infringement claims, been granted a permanent injunction, and has demonstrated that the defendant has no legal claim to the mark, a court should grant declaratory relief. The court agrees with the plaintiffs and therefore declares that the defendant and the companies she controls have never had common law rights in the mark "The Platters."

*Herb Reed Enters. v. Bennett*, 2011 U.S. Dist. LEXIS 70456, **14-15 (D. Nev. 2011). Finally, this Court has also recently issued a preliminary injunction against a former employee of FPI, Monroe Powell, recognizing the prior Nevada decisions and Reed's superior rights in the mark to anyone taking rights through FPI, PPI and or the companies' owners. *See Herb Reed Enters. v. Monroe Powell's Platters, LLC*, 2012 U.S. Dist. LEXIS 12453 at **15-17 (D. Nev. Feb. 1, 2012).

Defendants admit that whatever rights they have are derived from FPI or PPI. However, they could not have acquired legitimate rights in the mark as a result of any agreement with those entities because both the Ninth Circuit and this Court have held that FPI and PPI never demonstrated they had legitimate rights to the mark in the first instance. FPI and PPI never

---

[8] Despite claiming to have learned of that order on May 20, 2011, nearly a month before the appeal period ran, and despite claiming to have an interest in THE PLATTERS mark, Larry Marshak has never sought to intervene in the Nevada Action. (Sommers Decl. ¶ 5.)

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

received rights in the mark by virtue of an assignment because the California Superior Court held that the 1956 transfer of the performers' rights and interest in the name "The Platters" to FPI was void, and that the performers retained all rights therein. *See The Five Platters, Inc. v. 12319 Corp.*, Los Angeles Superior Court, Case No. C43926 (the "1974 Decision"); *See Robi v. Five Platters Inc.*, 838 F.2d 318 (9th Cir. 1988) (holding that FPI was barred from reasserting rights to the mark by virtue of the 1956 assignment as a result of the prior 1974 Decision). In 1999, the Ninth Circuit also noted that the 1974 Decision had found the 1956 Assignment ineffective. *Robi v. Reed*, 173 F.3d 736, 738 (9th Cir. 1999); *See also The Five Platters, Inc. v. Powell*, 7 Fed. App'x 794 (9th Cir. 2001) (recognizing the prior decisions *supra*).

Defendants fare no better under the 2001 New York decision. That decision was based on the 1987 Stipulation in which Reed agreed with FPI that he would not use the name by itself, but only in connection with his name. The New York District Court, analyzing prior cases, held that Reed was bound by the terms of the 1987 Stipulation until such time as a court made a final determination that FPI had no rights in the mark. *See Marshak v. Reed*, 229 F. Supp. 2d 179, 185 (E.D.N.Y. 2002). Marshak never decided FPI's ultimate rights to the mark, and indeed, declined to do so. *See id.* Thus, under that decision, Reed could not prevent FPI and its successors or assigns from using the mark until such time as a court of competent jurisdiction entered an order, with all appeals exhausted, that that FPI had no rights to THE PLATTERS mark. As a result of this Court's May 16, 2011 default judgment, it was determined that "FPI has no right in the name 'The Platters'" as required by the 1987 Stipulation." *Herb Reed Enters. v. Monroe Powell's Platters, LLC*, 2012 U.S. Dist. LEXIS 12453 at *15. The Nevada Action resulted in " 'a final order with all appeals being exhausted' and triggered the escape clause in the 1987 Stipulation." *Id.* Thus, the basis for the 2001 Injunction—and Defendants' claim of rights to use the mark by virtue of that decision—is no longer in effect.

Although Defendants claims to have received rights in THE PLATTERS mark as a result of a transfer from FPI, PPI and/or Jean Bennett, they in fact received nothing. Prior decisions, including the default judgment in this Court establish that FPI and PPI had no rights in THE PLATTERS mark in the first instance, and thus could not transfer rights to Marshak via

stipulation, license, or otherwise. It is axiomatic that a "grantor cannot give rights greater than those which he owns." *Marshak v. Treadwell*, 2007 U.S. Dist. LEXIS 66622 at **57-58 (D.N.J. Sept. 7, 2007) (finding that Larry Marshak could not have acquired rights to the name "The Drifters" from a person whose rights in that name were nullified). Because a final order determining that FPI had no rights in the mark was entered, with all appeal exhausted, Defendants have been using the mark THE PLATTERS without any legitimate right to do so.

    2.    *Plaintiff Owns Rights To The Mark HERB REED AND THE PLATTERS*

The mark HERB REED AND THE PLATTERS, Registration Number 2,796,412, was registered by Herb Reed on the principal register with the United States Patent and Trademark Office. On June 24, 2010, the Patent and Trademark Office provided Notice Of Acknowledgement of incontestability of the mark HERB REED AND THE PLATTERS pursuant to §15 of the Trademark Act, 15 U.S.C. §1065. Rights to the mark were assigned to the Plaintiffs.

Plaintiff's registration is prima facie evidence of the validity of the registered mark. 15 U.S.C. § 1057(b). Registration is also prima facie evidence of the registrant's exclusive right to use the mark in commerce or in connection with the goods or services specified in the certificate.

    3.    *Defendants' Use Of THE PLATTERS Mark Infringes on Plaintiff's Rights In The Mark THE PLATTERS And On The Registered Mark HERB REED AND THE PLATTERS*

"The core element of trademark infringement is the likelihood of confusion, *i.e.*, whether the similarity of the marks is likely to confuse customers about the source of the products." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999). The cornerstone of a likelihood of confusion analysis is based on whether the ordinary, prudent consumer in the marketplace would likely be confused. 3 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, 4th Ed., § 23.63. With respect to musical groups, Truth in Music legislation, which has been passed in numerous states including Nevada, provides clear guidance on the likelihood of confusion and what groups such as Marshak's must do to avoid deceptive conduct. Under Nevada's statute, it is a deceptive trade practice to "advertise[] or conduct[] a live musical performance ... through the use of a false, deceptive or misleading affiliation, connection or association between a performing group and a recording group." Nev.

Rev. Stat. Ann. § 598.0922. If a group does not have rights in a federal service mark comprising in whole or dominant part the recording group's mark or name, or does not have at least one member of the original recording group, its "live musical performance or production [must be] identified in all advertising and promotion as a *salute or tribute* and the name of the performing group [cannot be] so closely related or similar to that used by the recording group that it would tend to confuse or mislead the public." *Id.* The provisions of the statute are followed by numerous performers in Las Vegas who, like Marshak, promote impersonators. Balboni Decl. ¶25.

Here, there is no question as to similarity of the mark THE PLATTERS used by both Plaintiff and Defendants—they are identical. Plaintiff uses the mark in connection with Herb Reed's group's performances as "Herb Reed and The Platters" or "Herb Reed's Platters," as well as collecting royalties under THE PLATTERS mark. Defendants use the mark to promote a faux Platters group (and possibly multiple groups) that, although those groups do not include any of the original members and have no connection to the original group, nonetheless go by the name "The Platters" without any qualification. "Where the marks are identical, the likelihood that a knowledgeable consumer would be confused as to the mark's origin is great." *Herb Reed Enters. v. Bennett*, 2011 U.S. Dist. LEXIS 70456, *9 (D. Nev. 2011).

Defendants' use of the mark is particularly egregious in light of the way they promote and market the group without any attempt to distinguish it from the original, going so far as using an album cover for the original group as part of their promotional literature. They do not indicate in their advertising that the group is not connected to the original, and their video calls the group "the most legendary group[] of all time, live and in concert." Those representations are clearly false and misleading to the public because they imply that "The Platters" group promoted by the Defendants is the same group as the original Platters. *See e.g., Five Platters, Inc. v. Powell*, 7 Fed. App'x 794 (9th Cir. 2001). In addition, given that Defendants use the mark to promote a vocal group that perform in the same style and using the same musical numbers that were made famous by the "original" Platters, there is little question that the consuming public could assume that 1) their counterfeit group is the "original" group or has original members of the group performing; 2) are endorsed by Herb Reed or other original members of The Platters; or 3) could otherwise

understand these groups to be a joint ventures between the parties, perhaps even the same group. *See Brookfield*, 174 F.3d at 1057-58 (the Lanham Act protects against many different forms of confusion).

Given the fame of the mark, and the fact that recordings of The Platters' hits are still being sold and played on the radio, in advertising, and in motion pictures, *see* Balboni Decl. ¶23, any use by Defendants must make clear to the public Defendants' lack of affiliation with the original group to avoid confusion. *Id.* Defendants' offer to add the word "revue" after "The Platters" does not alleviate confusion. That term does not clarify the source of the services provided, and does not make clear that the group has no connection to the original group or Plaintiff's group. *Id.* It does not follow the dictates of Nevada's Truth in Music Statute, because it neither identifies the group as a "salute or tribute" and because "The Platters Revue" is "so closely related or similar to [The Platters] that it would tend to confuse or mislead the public." *See* Rev. Stat. Ann. § 598.0922(c). Indeed, "virtually no amount of consumer care can prevent confusion where two entities have the same name." *Herb Reed Enters. v. Bennett*, 2011 U.S. Dist. LEXIS 70456 at **9-10 (quoting *Exctropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1134 (C.D. Cal. 2001). "It is irrational to expect that even the most sophisticated consumer will exercise the kind of scrupulous examination that would enable him or her to discern the difference between nearly identical marks." In fact, Marshak's show is not listed as a tribute at all, but instead as a "headliner show" along with other "big names and big acts" such as Celine Dion, Elton John, and Rod Stewart. Balboni Decl. ¶25.

**B.     Reed Will Suffer Irreparable Harm if the Court Does Not Enjoin Defendants From Using THE PLATTERS Mark**

Although it is unclear whether the irreparable harm presumption can be applied to trademark infringement claims, *see Herb Reed Enters. v. Monroe Powell's Platters, LLC*, 2012 U.S. Dist. LEXIS 12453 at *22 (D. Nev. Feb. 1, 2012), Plaintiff is likely to succeed on the merits on its trademark claims and thus demonstrates it will be irreparably harmed if a preliminary injunction is not issued. Defendants' continued and unfettered use of the mark THE PLATTERS will cause Plaintiff great and certain harm in the form of damage to its reputation and loss of

goodwill among consumers in in its performances and livelihood. Plaintiff's group continues to perform across the country as "Herb Reed and The Platters" or "Herb Reed's Platters." The proliferation of counterfeit groups naturally reduce Plaintiff's opportunity for bookings thus impairing its business. (Balboni Decl. ¶ 26.) In addition, as demonstrated by the years of litigation and Defendants' and other parties' attempt to use the mark THE PLATTERS, right in the mark are valuable. Plaintiff can use the mark itself or even license it to generate additional income. *See Herb Reed Enters.,* 2012 U.S. Dist. LEXIS 12453 at **22-23. Further, if continued confusion over Plaintiff's rights to the mark continues and infringement is not stopped, other groups might form which would only further harm Plaintiff's reputation and goodwill and dilute the value and goodwill associated with the mark. (Balboni Decl. ¶¶ 26-29.) Unless Defendants are enjoined from wrongfully using the mark, they will continue causing immediate and ongoing harm to the Plaintiff. *See also Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.,* 240 F.3d 832, 841 (9th Cir. 2001) (recognizing the potential loss of goodwill or the loss of the ability to control reputation may constitute irreparable harm).

### C. The Threat of Irreparable Harm to Plaintiff Outweighs Any Potential Harm to Defendants

As described above, without this relief, Plaintiff will suffer substantial irreparable harm to Reed's reputation as an entertainer and to the right to benefit from the fame he brought to the mark THE PLATTERS. Defendants are well aware that it was Reed and the original Platters that made the name famous, and also know that Reed is the only surviving member of that group. All the goodwill in THE PLATTERS mark has inured to him, which he has now transferred to his company. As found by the Court of Appeals for the Ninth Circuit, FPI engaged in fraudulent conduct with respect to the use of THE PLATTERS mark and acted inequitably in their attempts to wrest the mark away from its rightful owners. Defendants based their rights on their association with FPI and continue to wrongfully assert rights in a mark that does not belong to them. Indeed, as described above, Defendants' own conduct in promoting their group(s) mirrors the wrongful conduct outlined by the Ninth Circuit in *Powell*. Any harm to Defendants associated with this injunction would be slight since they have no legitimate rights in the mark at all.

### D. The Public Interest is Served By Enjoining Defendants

The public interest will be served by granting the requested injunction that would prevent the Defendants from any further use of the mark THE PLATTERS, except, perhaps, as a tribute group as allowed under the Truth In Music statute. The purpose of trademark law is to "prevent consumer confusion in the marketplace." *Herb Reed Enters.*, 2012 U.S. Dist. LEXIS 12453 at *23. Thus, in this case, the public interest would clearly be served by prohibiting groups who are not connected with original members of The Platters from using THE PLATTERS mark without clearly distinguishing their source. There is no public interest to be protected by allowing the Defendants from continuing to defraud the public into believing that their copycat group is, or is associated with, the original Platters.

### CONCLUSION

For the reasons set forth herein, the Plaintiff respectfully requests that this Honorable Court issue a preliminary injunction order in the form of the proposed Order submitted herewith.

Dated this 4th of April, 2012.

Respectfully submitted,

LEWIS AND ROCA LLP

By: ___/s/John L. Krieger___
John L. Krieger
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200

ERIC SOMMERS *(Pro Hac Vice to be submitted)*
Sommers Law, PLLC
600 State Street, Suite 1
Portsmouth, New Hampshire 03801
(603) 570-4854

*Attorneys for Herb Reed Enterprises, LLC*