UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HERB REED ENTERPRISES, LLC, a Massachusetts Company, | Case No. 2:12-cv-00560-MMD-GWF |
| Plaintiff, | ORDER |
| v. | |
| FLORIDA ENTERTAINMENT MANAGEMENT, INC., a Nevada Company, and LARRY MARSHAK an individual, | |
| Defendants. | |

I.  **SUMMARY**

Before the Court are Plaintiff Herb Reed Enterprises, LLC's ("HRE") Motion for Summary Judgment (dkt. no. 99) and Defendants Florida Entertainment Management, Inc. ("FEMI") and Larry Marshak's (collectively "Marshak") Motion for Summary Judgment (dkt. no. 106). For the reasons set forth below, Plaintiff's Motion is granted and Defendants' Motion is denied.

II. **BACKGROUND**

A detailed explanation of the factual and procedural background in this case is outlined in the Court's July 24, 2012, Order addressing Plaintiff's Motion for a Preliminary Injunction ("PI Order") (dkt. no. 43). The Court granted Plaintiff's Motion, preliminarily enjoining Defendants and their agents from using the mark "The Platters," and any equivalent or phonetically similar names or marks, in connection with any vocal group in any advertisements, promotional marketing, or other materials, with two narrow

exceptions, as outlined in the PI Order. The Court also found that the instant suit was not barred by *res judicata* or laches. (*Id.* at 10-13.)

Defendants appealed to the Ninth Circuit Court of Appeals. On December 2, 2013, the Ninth Circuit issued an opinion ("Ninth Circuit Opinion") reversing and remanding this Court's PI Order. (Dkt. no. 128.) The Ninth Circuit affirmed this Court's determination that Plaintiff had demonstrated likelihood of success on the merits, but stated that, while this Court had articulated the correct standard for likelihood of irreparable harm, the record did not support a determination of likelihood of irreparable harm. (*See id.* at 15, 19.) The Ninth Circuit also affirmed this Court's determination that *res judicata* does not bar HRE from bringing the instant case and that HRE is not barred by laches from challenging Marshak's use of "The Platters" mark. (*See id.* at 10–13.)

On December 5, 2013, the Court ordered the parties to file a joint status report addressing the effect of the Ninth Circuit's Opinion on the status of the case and the pending motions. (Dkt. no. 129.) Not satisfied with the status report, the Court held a hearing on February 25, 2014, on the parties' pending motions. (Dkt. no. 137.)

There are few disputes remaining between the parties regarding the material facts in this case. Instead, the primary disagreement concerns the scope of the mark. In oral argument, Defendants contend that the pertinent issue is whether HRE owns the right to The Platters mark "for live musical performances." While the infringement relates to live performances, Plaintiff seeks exclusive control of the mark "The Platters" in all arenas, including live performances.

### III.   MOTIONS FOR SUMMARY JUDGMENT

#### A.   Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

1  matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine"
2  if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for
3  the nonmoving party and a dispute is "material" if it could affect the outcome of the suit
4  under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).
5  Where reasonable minds could differ on the material facts at issue, however, summary
6  judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.
7  1995). "The amount of evidence necessary to raise a genuine issue of material fact is
8  enough 'to require a jury or judge to resolve the parties' differing versions of the truth at
9  trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l
10 Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary
11 judgment motion, a court views all facts and draws all inferences in the light most
12 favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793
13 F.2d 1100, 1103 (9th Cir. 1986).

14 The moving party bears the burden of showing that there are no genuine issues
15 of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In
16 order to carry its burden of production, the moving party must either produce evidence
17 negating an essential element of the nonmoving party's claim or defense or show that
18 the nonmoving party does not have enough evidence of an essential element to carry its
19 ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210
20 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements,
21 the burden shifts to the party resisting the motion to "set forth specific facts showing that
22 there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may
23 not rely on denials in the pleadings but must produce specific evidence, through
24 affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME
25 Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show
26 that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285
27 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a
28 ///

scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

### B. Defendants' Motion

Defendants seek summary judgment as to Defendants' affirmative defense of laches. (Dkt. no. 106.) The Court's PI Order held that laches do not bar HRE's trademark infringement claim in this case. (Dkt. no. 43 at 13.) The Ninth Circuit's Opinion affirmed that finding. (Dkt. no. 128 at 13 ("[L]aches does not preclude consideration of HRE's trademark infringement claim and request for preliminary injunction.").) In oral argument, Defendants conceded that the Ninth Circuit's Opinion denying Defendants' laches argument is the law of this case and precludes a finding that laches bar Plaintiff's suit. Defendants' Motion for Summary Judgment is therefore denied.

### C. Plaintiff's Motion

Plaintiff moves for summary judgment on its trademark infringement claim. In order to succeed, Plaintiff must establish that it is "(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Grocery Outlet, Inc. v. Albertson's, Inc.*, 497 F.3d 949, 951 (9th Cir. 2007).

#### 1. Ownership

In its PI Order, the Court found that HRE was likely to succeed in establishing that Reed is the owner of the patent. "It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 as modified, 97 F.3d 1460 (9th Cir. 1996). Additionally, the party claiming ownership must establish continuousness of use. *See Dep't of Parks and Recreation for State of Cal. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1125–26 (9th Cir. 2006); *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 711-12 (9th Cir. 1974) ("[O]wnership of a mark requires both

///

appropriation and use in trade; and [ ]ownership of a mark and the exclusive right to a mark belongs to the one who first uses the mark on goods placed on the market.")

The Court found in its PI Order that Reed, as a founding member of the original group, began using the mark in 1953 and that he did not abandon the mark because he either performed as a member of The Platters and/or received royalties from The Platters' sound recordings. (Dkt. no. 43 at 18.) Marshak's only challenge on appeal regarding Reed's ownership addressed Defendants' affirmative defense of abandonment. (*See* dkt. no. 128 at 14.) The Ninth Circuit affirmed the Court's finding that Reed did not abandon the mark (dkt. no. 128 at 15), and Marshak admitted in oral argument that this finding is the law of the case.

In determining whether Reed has superior rights, it is undisputed that Reed was a founding member of the group and the only person to have remained and performed with it from its inception. (*See* dkt. no. 99 at 18 (*citing* dkt. no. 100-2)); *see also Robi v. Reed*, 173 F.3d 736, 740 (9th Cir. 1999).[1] Plaintiff also claims that Reed used the mark continuously in commerce. During briefing on the preliminary injunction Defendants argued that Plaintiff had not presented credible evidence to support the contention that Reed received royalties from 1953 to death. The Court, however, found that the declaration of Frederick Balboni was sufficient on a preliminary injunction standard. (Dkt. no. 43 at 14 n.13.) In support of its Motion for Summary Judgment, Plaintiff submitted another declaration from Frederick Balboni stating that HRE has more than 2,500 pages of royalty records with records for every year from 1984 to 2012 and for multiple years in the 60s and 70s. (*See* dkt. no. 100 ¶ 19.) Attached to Balboni's declaration as exhibit 4 are samples of HRE business records. In their Opposition, Defendants acknowledge that

---

[1] There is a factual dispute between the parties regarding whether Tony Williams assigned his rights to Marshak. It is unnecessary for the Court to resolve this dispute in the instant order given that regardless of the resolution, this Court has already found that Tony Williams' rights are inferior to Reed's as Reed stayed with the group longer than Williams. (*See* dkt. no. 43 at 16-17 (*citing Robi v. Reed*, 173 F.3d 736, 736 (9th Cir. 1999)).)

1   Reed collects royalties from the songs recorded by the original group. (*See* dkt. no. 113
2   at 12.) Therefore, the Court finds that Reed continuously received royalty payments
3   related to The Platters original recordings.

### a. Continuous Use

5   Marshak argues, however, that Reed does not have superior rights because he
6   cannot establish commercial use of The Platters mark as a single-source identifier of
7   Reed's goods and services marketed under his exclusive control between at least 1987
8   and 2012. (*See* dkt. no. 113 at 22.) Specifically, Marshak asserts that neither Reed's
9   collection of royalty payments nor his use of the mark Herb Reed and The Platters
10  constitutes continuous use. Marshak argues that finding use of Herb Reed and The
11  Platters to be continuous use would only be possible under a "tacking" mechanism, but
12  the strict requirements of that doctrine are not met in this case. (*See id.* at 23.)

### i. Use in Commerce

14  In oral argument, HRE claimed that the analysis for continuous use is the same
15  as the analysis for abandonment and that Reed's royalty payments are sufficient to
16  demonstrate continuous use. In order to demonstrate abandonment under 15 U.S.C. §
17  1127, a party must show: (1) discontinuance of trademark use; and (2) intent not to
18  resume use. As the Ninth Circuit found in its Opinion, while non-use for three years is
19  *prima facie* evidence of abandonment, non-use is a high standard. (*See* dkt. no. 128 at
20  14-15 (*citing* 15 U.S.C. § 1127).) "Even a single-instance of use is sufficient against a
21  claim of abandonment of a mark if such use is made in good faith." *Carter-Wallace, Inc.
22  v. Proctor & Gamble Co.*, 434 F.2d 794, 804 (9th Cir. 1970).

23  The Court does not agree with Plaintiff's contention that demonstrating Reed did
24  not abandon the mark is sufficient to establish continuous use. Were the two standards
25  synonymous, establishing a single-instance of use, and thus negating abandonment,
26  would satisfy the requirements for continuous use. However, the Court finds that in this
27  case Plaintiff's evidence negating abandonment, Reed's undisputed continuous use in
28  commerce (*see* Section III.C.1 *supra*), is sufficient to demonstrate continuous use. *See*

*Marshak v. Treadwell*, 240 F.3d 184, 200 (3d Cir. 2001) ("[T]he commercial exploitation of classic ... recordings in this country constitutes use"); *Kaufhold v. Caiafa*, 872 F. Supp. 2d 374, 381 (D.N.J. 2012) (finding that in the Third Circuit it is well settled that receiving royalties for previously recorded material constitutes commercial use of a trademark).

Marshak asserts that use in commerce cannot be sufficient to establish continuous use as all original members receive royalty payments. Plaintiff is not claiming, however, that Reed has superior rights to the mark simply because he continuously received royalty payments. As discussed in Section III.C.1. *supra*, it is undisputed that Reed was a founding member of The Platters and the only person to have remained and performed with the original group from its inception. The fact that other original members receive royalty payments does not have an effect on whether Reed's royalty payments satisfy the continuous use requirement.

Marshak also argues that Reed does not have a superior right to the mark given that Reed did not have control over the quality of the recordings of songs from the original group. (*See* dkt. no. 113 at 25–28.) Defendants simply state that "[t]he 'royalty use' Reed relied upon here is for his purported use of THE PLATTERS mark for music performed and recorded prior to 1969" and that "[t]here is no allegation that Reed changed those recordings since that time [1969] or otherwise exerted any control or influence over same." (Dkt. no. 113 at 26.) However, Defendants do not allege, let alone provide evidence, that anyone exerted changes to the recordings after 1969. As Plaintiff asserts, Reed, as the only member who participated in all music recorded by The Platters until the original group disbanded in 1969, had control over the quality of their original performances, captured in the recordings. (*See* dkt. no. 118 at 11.) Without Defendants introducing evidence to the contrary, therefore, Plaintiff's undisputed control over the quality of the original recordings remains.

### ii. Live Performances

Marshak further argues that Reed cannot establish continuous use under the mark given that he did not perform under The Platters from 1987 through 2012, and that

during that time period all of Reed's performances were under the name Herb Reed and The Platters. (*See* dkt. no. 113 at 23.) Reed responds that live performances are just one use of the mark and that "it cannot be disputed that the goodwill associated with THE PLATTERS mark is the goodwill created by the original group who recorded the hits and made the mark famous." (Dkt. no. 118 at 8.) As a result, the use of The Platters recordings trades off that goodwill. Plaintiff thus argues that while live performance and use of recordings are separate uses, it's the same goodwill.

The Court agrees that the royalties that Reed receives are derived from the goodwill of the original group. The act of performing live using the mark is just one potential use of the mark and Marshak points to no case law suggesting that continuous performance is a requirement of establishing use. Given the totality of the circumstances, Reed's use of the mark in commerce demonstrates continuous use. As the Court finds that continuous live performance is not a requirement, it need not reach the question of whether Reed's performance in the composite Herb Reed and The Platters constitutes live performance using the mark. Additionally, it need not discuss Reed's control over the quality of Herb Reed and The Platters.

### 2. Confusingly Similar

Plaintiff claims that there is a likelihood of confusion because: (1) consumers will confuse Marshak's group with the original Platters; and (2) consumers will confuse Marshak's group with HRE's performing group, which goes by "Herb Reed and The Platters" or "Herb Reed's Platters." The Court found in its PI Motion a likelihood of success on Plaintiff's claim that Marshak's use of "The Platters" is confusingly similar to Plaintiff's use of both "The Platters" and "Herb Reed and The Platters." Marshak did not challenge this finding in its appeal to the Ninth Circuit (*see* dkt. no. 128 at 14 n.4), nor does Marshak oppose HRE's argument regarding likelihood of confusion in HRE's Motion for Summary Judgment (*see* dkt. no. 118 at 2).

Marshak did not present any evidence that would affect the Court's analysis in its PI Order. Indeed, at oral argument, Marshak acknowledged that there is no dispute that

the marks are the same to the extent that Reed is claiming rights to The Platters instead of Herb Reed and The Platters. Marshak's only argument at the hearing against finding the marks to be confusingly similar is that there is no evidence of actual confusion during the twenty years that "Herb Reed and The Platters" and "The Platters" have been co-existing. However, "[b]ecause of the difficulty in garnering such evidence, the failure to prove instances of actual confusion is not dispositive." *Sleekcraft*, 599 F.2d at 353. Indeed, Marshak admitted in oral argument that actual confusion is not a necessary factor.

As there are no disputed material facts that change the Court's analysis in its PI Order, the Court finds as a matter of law that Plaintiff has demonstrated likelihood of confusion.

### 3. Defendants' Legal Defenses of *Res Judicata*, Abandonment, and Laches

Plaintiff additionally seeks summary judgment on Defendants' legal defenses of *res judicata* and abandonment, and on the equitable defense of laches. The Court previously considered these defenses in its PI Order and determined that they do not bar Plaintiff's claim. The Ninth Circuit affirmed and its finding against abandonment and laches is now the law of this case. The Court therefore grants Plaintiff's Motion regarding Defendants' defenses.

### D. Judgment as a Matter of Law on Defendants' Counterclaims

Finally, Plaintiff argues that it is entitled to judgment as a matter of law on Defendants' counterclaims of trademark infringement and violations of the Nevada Deceptive Trade Practices Act. (*See* dkt. no. 99 at 32.) Plaintiff fails to explain clearly the basis of its request and Defendants do not seem to offer any argument in opposition, despite the fact that they titled Section V.B.2. of their brief "Plaintiff Is Not Entitled to Summary Judgment on Defendants' Defenses of Laches and Abandonment or Defendants' Counterclaims." The Court therefore denies Plaintiff's motion without prejudice.

## IV.  MOTIONS TO STRIKE

Plaintiff seeks to strike Defendants' declarations in support of their Motion for Summary Judgment (dkt. nos. 107, 108) and Defendants' declarations in support of their Response to Plaintiff's Motion for Summary Judgment (dkt. nos. 114, 115). (Dkt. nos. 109, 119.)

Under Rule 12(f) a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. However, motions to strike apply only to pleadings, and courts are generally unwilling to construe the rule broadly and refuse to strike motions, briefs, objections, affidavits, or exhibits attached thereto. *See Hrubec v. Nat'l R.R. Passenger Corp.*, 829 F. Supp. 1502, 1506 (N.D. Ill. 1993) (denying a motion to strike a motion and its memorandum in support of that motion, holding that "[n]either of the offending items, however, constitutes a pleading."); *Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202 v. Admiral Heating & Ventilation, Inc.*, 94 F.R.D. 300, 304 (N.D. Ill. 1982) (denying a motion to strike when "the offending footnote is in a memorandum, not a pleading.").

Additionally, a motion to strike is unnecessary in this case as Plaintiff was already given an opportunity to address the admissibility of Defendants' evidence in Plaintiff's response to Defendants' Motion for Summary Judgment and in Plaintiff's reply to Defendants' Response to Plaintiff's Motion for Summary Judgment.

The Court, therefore, denies Plaintiff's motions to strike.

## V.  MOTIONS TO SEAL

Plaintiff has filed motions seeking to seal several exhibits to both its Motion for Summary Judgment and its Response to Defendants' Motion for Summary Judgment. (Dkt. nos. 104, 112.) Defendants have filed a motion to seal two exhibits to their opposition to Plaintiff's Motion to Strike (dkt. no. 109). (Dkt. no. 122.) No oppositions were filed. The documents the parties seek to seal involve trade secrets and confidential business information and fall within the protective order. The Court finds that the parties

///

have demonstrated "compelling reasons" for sealing these documents. *See Kamakana v. City and County of Hawaii*, 447 F.3d 1172 (9th Cir. 2006).

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions.

It is therefore ordered that Plaintiff Herb Reed Enterprises, LLC's Motion for Summary Judgment (dkt. no. 99) is granted.

It is further ordered that Defendants Florida Entertainment Management, Inc. and Larry Marshak's Motion for Summary Judgment (dkt. no. 106) is denied.

It is further ordered that Plaintiff's motions to strike (dkt. nos. 109, 119) are denied.

It is further ordered that the parties' motions to seal (dkt. nos. 104, 112, 122) are granted.

DATED THIS 31st day of March 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE